# United States District Court
for the
Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

LG Cellular Phone Model: LG-TP260; FCC ID: ZNFTP260 (Subject Phone 1)
Samsung Cellular Phone Model: SM-N900; FCC ID: A3LSMN900 (Subject Phone 2)

Case No. 18-MJ-1038

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See descriptions included in Exhibit A, attached and incorporated by reference.

located in the Western District of New York, there is now concealed *(identify the person or describe the property to be seized)*:
The items set forth on the attached schedule of items to be seized, attached hereto as Exhibit B and incorporated by reference.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. §§ 841(a)(1), 843(b), 844(a), and 846

The application is based on these facts:
- ☒ continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

BRIAN RICHARDS
Postal Inspector
United States Postal Inspection Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 29, 2018

*Judge's signature*

HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge
*Printed name and Title*

City and state: Buffalo, New York

# EXHIBIT A

## DESCRIPTIONS OF SUBJECTS TO BE SEARCHED

## SUBJECT PHONES 1-2

## SUBJECT PHONE 1

## LG Cellular Phone Model: LG-TP260; FCC ID: ZNFTP260



## SUBJECT PHONE 2

### Samsung Cellular Phone Model: SM-N900; FCC ID: A3LSMN900



## SCHEDULE OF ITEMS TO BE SEARCHED FOR AND SEIZED

Items comprising evidence of, or property intended for use, or used in committing violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 844(a) and 846, consisting of:

a) Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking of cocaine, and photographs regarding drug trafficking of cocaine and drug trafficking associates contained in the cellular telephones;

b) Text messages and emails contained in the cellular telephones related to drug trafficking of cocaine and drug trafficking associates; and

c) Records regarding the ownership and/or possession of the searched items.

# EXHIBIT B

## AFFIDAVIT

STATE OF NEW YORK )
COUNTY OF ERIE       )   SS:
CITY OF BUFFALO     )

I, **BRIAN RICHARDS**, Postal Inspector, United States Postal Inspection Service, having been duly sworn, states as follows:

1. I am a Postal Inspector for the United States Postal Inspection Service (USPIS). As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I have served as a Postal Inspector since August 2010. I am currently assigned to the Buffalo, New York field office. In my capacity as a Postal Inspector, I have completed training in the investigation and prosecution of violations of federal statutes within the investigative jurisdiction of the Postal Inspection Service, to include: mail theft, identity theft, narcotics trafficking, fraud, and financial crimes. I am currently assigned to the Prohibited Mail/Fraud Team with the responsibility of investigating violations of federal laws where the U.S. Mails are used to facilitate money laundering. In addition, I also have the responsibility of investigating violations of federal laws where the U.S. Mails are used to transport prohibited items, including controlled substances, which have been sent from locations within

and outside of the United States. I have participated in investigations that have resulted in the arrest of individuals who have distributed and received controlled substances, as well as the seizure of illegal narcotics. As a result of my experience, I am familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking in the Western District of New York and how drug traffickers utilize wire communications to facilitate their illegal activities. My investigative experience detailed herein, and the experiences of other law enforcement agents, who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein.

3. Your Affiant states that this investigation was conducted by Postal Inspectors, Special Agents of the Drug Enforcement Administration (DEA), and other law enforcement personnel assigned to the Town of Tonawanda Police Department (TTPD). Your Affiant is fully familiar with the facts and circumstances of this investigation, such familiarity having been gained through: your Affiant's personal knowledge based upon your Affiant's participation in this investigation; statements, and/or reports, provided to your Affiant by law enforcement personnel of the DEA and TTPD; controlled delivery operations; interviews of various individuals believed to be associated with subjects of the investigation; physical surveillances; records checks of various public and law enforcement data bases; and other investigative techniques.

4. This affidavit is made in support of a federal search warrant application for the following cellular phones recovered following the arrest of **IRAMARIE VELEZ-MATEO** and **OSVALDO RIVERA-AMARO** pursuant to a controlled delivery at 62 Crane Place,

Tonawanda, New York 14150, conducted by U.S. Postal Inspectors, DEA, and the TTPD: one (1) LG Cellular Phone Model: LG-TP260; FCC ID: ZNFTP260 (**Subject Phone 1**); and one (1) Samsung Cellular Phone Model: SM-N900; FCC ID: A3LSMN900 (**Subject Phone 2**).

5. As it is my purpose to obtain a search warrant for which only probable cause is required, I have not included each and every fact learned during the investigation to date. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the Subject Telephones, described above, are evidence of, were used in committing, and/or contains evidence/fruits/instrumentalities of violations of: 21 U.S.C. § 841(a)(1) (possession with the intent to distribute, and to distribute, cocaine, a Schedule II controlled substance); 21 U.S.C. § 843(b) (use of a communication facility in furtherance of a controlled substance felony); 21 U.S.C. § 844(a) (simple unlawful possession of cocaine); and 21 U.S.C. § 846 (conspiracy to possess with the intent to distribute, and to distribute, cocaine, a Schedule II controlled substance) (hereinafter, "Enumerated Offenses").

## PROBABLE CAUSE

6. Since November 2017, the United States Postal Inspection Service, DEA, and the TTPD have been conducting an investigation into criminal activities associated with the addresses 62 Crane Place, Tonawanda, New York and 103 Cobb Street, Tonawanda, New York.

7. On or about November 15, 2017, United States Postal Inspectors in Buffalo were alerted to a suspicious parcel during a routine review of incoming mail in Puerto Rico. The parcel was initially deemed suspicious because it shared characteristics known to be associated with packages containing narcotics, and the parcel was forwarded to Postal Inspectors in Buffalo for further review. The parcel was addressed to Luis Medina, 62 Crane Pl St., Tonawanda, NY 14150. Postal Inspectors obtained a Federal Search Warrant for the parcel on November 17, 2017 from the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, and the package was opened. Inside the package was approximately 9.20 oz. (approximately 260.82 grams) of a white powdery substance concealed inside a game set that had been wrapped in Happy Birthday wrapping paper. The substance field tested positive for cocaine.

8. On or about December 11, 2017, Postal Inspectors were alerted to a second suspicious parcel sent from Puerto Rico during a routine review of incoming mail in Buffalo. The parcel was addressed to Medina, 103 Cobb St, Tonawanda, NY 14150. Postal Inspectors obtained a Federal Search Warrant for the parcel on December 14, 2017, from the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, and the package was opened. Inside the package was approximately 4.80 oz. (approximately 136.08 grams) of a white powdery substance concealed inside a second box, shrink wrap, tissue paper, a vacuum sealed bag, and placed amongst various electronic components. The substance field tested positive for cocaine.

9. On or about December 15, 2017, Postal Inspectors were alerted to a third suspicious parcel sent from Puerto Rico during a review of incoming mail in Buffalo. The parcel was addressed to Iramarie Velez, 62 Crane Pl, Tonawanda, NY 14150. Postal Inspectors obtained a Federal Search Warrant from the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, and the package was opened. Inside the package was approximately 4 lbs. 12.8 oz. (approximately 2 kilograms and 177.24 grams) of a white powdery substance concealed within cardboard boxes, a plastic storage bin, bubble wrap, newspaper, wrapping paper, plastic wrap, carbon paper, vacuum sealed bags, dryer sheets, and placed amongst canned goods and foam peanuts. The substance field tested positive for cocaine.

10. On December 21, 2017, the Honorable H. Kenneth Schroeder, Jr., United States Magistrate Judge, signed an anticipatory search warrant for 62 Crane Place, Tonawanda, NY 14150. On December 27, 2017, Postal Inspectors prepared the third parcel for delivery to 62 Crane Place, Tonawanda, New York by replacing the cocaine with "sham" contents. At approximately 10:58 a.m., Postal Inspectors, along with DEA Special Agents and the TTPD, attempted to deliver the parcel, but there was no answer at the door. A Postal Service Form 3849 (PS Form 3849), Delivery Notice/Reminder/Receipt, was left at the residence to notify the customer that an attempt had been made to deliver the parcel in question. At approximately 11:40 a.m., an unknown subject presented a PS Form 3849 to a U.S. Postal Service (USPS) employee in the area of 62 Crane Place in an effort to obtain the parcel, but was unsuccessful.

11.     On December 28, 2017, at approximately 9:30 a.m., a woman, later identified as **VELEZ-MATEO**, entered the Tonawanda Main Post Office and presented the PS Form 3849 left the previous day at 62 Crane Place. The woman asked for the parcel, but she was told the parcel was not available. The woman provided the phone number (787) 595-8204 to an USPS employee in order to be contacted about the parcel's delivery status.

12.     On December 28, 2017, at approximately 11:00 a.m., Postal Inspectors, along with DEA Special Agents and the TTPD, attempted a second controlled delivery of the package to 62 Crane Place. At approximately 11:03 a.m., **VELEZ-MATEO** accepted and signed for the package. **VELEZ-MATEO** took the package inside the residence. Within five minutes, **VELEZ-MATEO** exited the residence without the package, and left the property, driving away in a light gray Mazda 6, bearing New York State license plate HBL 9923.

13.     Approximately thirty minutes after **VELEZ-MATEO** left 62 Crane Place, a black Audi sedan, bearing New York State license plate GDB 8748, driven by a Hispanic male later identified as **RIVERA-AMARO**, was observed driving slowly past 62 Crane Place and circling the area. The vehicle slowly circled the area a second time before departing. This action is consistent with "counter-surveillance" often conducted by those engaged in criminal activity, in an effort to determine whether or not any law enforcement is present in the area. Approximately ten minutes later, the same black Audi returned to 62 Crane Place and backed up adjacent to the front door.

14.    **VELEZ-MATEO** exited the front passenger side of the vehicle and entered 62 Crane Place, leaving the front door open. **RIVERA-AMARO** exited the front driver's side of the vehicle and stood at the rear of the vehicle. **VELEZ-MATEO** immediately exited 62 Crane Place carrying the package that had just been delivered by law enforcement. **VELEZ-MATEO** carried the package to the vehicle where **RIVERA-AMARO** was waiting adjacent to the open trunk. **VELEZ-MATEO** placed the package into the trunk of the Audi, which **RIVERA-AMARO** subsequently closed.

15.    **RIVERA-AMARO** then returned to the driver's seat of the Audi while **VELEZ-MATEO** entered into the front passenger seat. They subsequently drove to a nearby residence, 103 Cobb Street, Tonawanda, New York 14150, where **RIVERA-AMARO** stopped to allow **VELEZ-MATEO** to exit the vehicle. This address was the intended destination of the second suspicious parcel seized by Postal Inspectors on December 14, 2017. **RIVERA-AMARO** remained in the driver's seat of the Audi and began driving out of the neighborhood. At approximately 11:55 a.m., the vehicle was stopped by law enforcement and **RIVERA-AMARO** was detained. The parcel delivered by to 62 Crane Place was recovered from the trunk of the vehicle. A black, LG cellular phone (**Subject Phone 1**) was found on the front, passenger side seat of **RIVERA-AMARO's** vehicle. Your affiant seized the cellular phone and later transferred custody of it to DEA Special Agent Greg Yensan at the DEA office in Buffalo.

16.    At approximately 12:10 p.m., **VELEZ-MATEO** was approached by law enforcement at the 103 Cobb Street residence and detained. On her person was a key chain

containing a key for the deadbolt lock on the front door of 62 Crane Place, and a black, Samsung cellular phone (**Subject Phone 2**). Special Agent Yensan seized the cellular phone and later brought it to the DEA office in Buffalo.

17. At approximately 12:15 p.m., the Federal Search Warrant was executed at 62 Crane Place. Inside the residence, U.S. Mail and other items belonging to **VELEZ-MATEO** were discovered. Additionally, evidence of narcotics distribution, including a digital scale and packaging materials, was recovered. No other subjects were located inside the residence and law enforcement noted that there was U.S. Mail in the name of **VELEZ-MATEO**, prescription medicine in the name of **VELEZ-MATEO**, and framed pictures of **VELEZ-MATEO** located within the residence.

18. Both **RIVERA-AMARO** and **VELEZ-MATEO** were arrested and transported to the DEA office in Buffalo, where they were advised of their rights. **RIVERA-AMARO** agreed to be interviewed and claimed ownership of **Subject Phone 1**. **RIVERA-AMARO** stated he had been contacted on his cellular phone by a friend named "Manny", who asked him to pick up the package that had been delivered by law enforcement to 62 Crane Place. **RIVERA-AMARO** consented to have his call records reviewed by law enforcement. The call history on **RIVERA-AMARO's** cellular phone showed he had three communications with a phone number he attributed to "Manny" following the controlled delivery of the parcel to 62 Crane Place.

19.     **VELEZ-MATEO** completed portions of DEA Form 202, Personal History Report, and stated her contact phone number was (787) 595-8204. This is the same phone number **VELEZ-MATEO** provided to an employee at the Tonawanda Main Post Office in order to be contacted regarding the delivery status of the parcel addressed to 62 Crane Place.

## SUMMARY OF RELEVANT TECHNOLOGY

20.     A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. These telephones send signals through networks of transmitter/receivers called "cells", enabling communication with other cellular telephones or traditional "land line" telephones. A cellular telephone usually includes a "call log", which records the telephone number, date, and time of calls made to and from the phone.

21.     In addition to enabling voice communications, cellular telephones offer a broad range of capabilities. These capabilities include, but are not limited to: storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device. Based on your Affiant's training and experience, and the information learned throughout this investigation, it is known that persons associated with drug trafficking

organizations in general utilize the cellular telephones to communicate with others about the possession, transportation, and distribution of controlled substances, including cocaine.

### SEEKING AUTHORIZATION TO SEARCH AND SEIZE

22. Accordingly, the application seeks authorization to search for and seize all:

a. Records of telephone calls, including incoming, outgoing, and missed calls, phone contact addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones;

b. Text messages and emails contained in the cellular telephones related to drug trafficking and drug trafficking associates; and

c. Records regarding the ownership and/or possession of the searched items.

23. Based on my training, my experience, my participation in other narcotics investigations, my participation in this investigation, and my discussions with other experienced law enforcement personnel, I have learned that significant narcotics traffickers such as dealers in cocaine and other controlled substances frequently maintain, in portable mobile communication and storage devices, addresses, email addresses and telephone numbers in directories, documents and files which reflect names, email addresses, addresses, telephone numbers, and objects related to drug trafficking, and photographs regarding drug trafficking and drug trafficking associates contained in the cellular telephones.

24. Based on your Affiant's experience, it is believed the **Subject Telephones** are evidence of and/or contain evidence of the Enumerated Offenses, which have been

committed. It is likely that **VELEZ-MATEO** and **RIVERA-AMARO** utilized these cellular devices to contact other co-conspirators regarding the delivery and sale of cocaine. As such, I believe that the **Subject Telephones** described above contains evidence of the Enumerated Offenses, which have been committed by **VELEZ-MATEO, RIVERA-AMARO,** and others.

25. Based on your Affiant's knowledge and training and the experience of other Agents with whom I have discussed this investigation, I know that in order to completely and accurately retrieve data maintained in cellular telephone hardware or software, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction, it is often necessary that the cellular telephones, related instructions in the form of manuals and notes, as well as the software utilized to operate such a device, be seized and subsequently processed by a qualified specialist in a laboratory setting.

26. Based on your Affiant's knowledge and training and the experience of other Agents with whom I have discussed this investigation, I know that in order to completely and accurately retrieve data maintained in cellular telephones hardware or software, to ensure the accuracy and completeness of such data, and to prevent the loss of the data either from accidental or intentional destruction, it is often necessary that the cellular telephones, related instructions in the form of manuals and notes, as well as the software utilized to operate such a device, be seized and subsequently processed by a qualified specialist in a laboratory setting.

## ANALYSIS OF ELECTRONIC DATA

27. The search warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure.

28. Searching the cellular telephones for the evidence described above may require a range of data analysis techniques. In some cases, it is possible for Agents to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. For example, Agents may be able to execute a "keyword" search that searches through the files stored in a cellular telephone for special words that are likely to appear only in the materials covered in the warrant by looking for particular directory or file names. In other cases, however, such techniques may not yield the evidence described in the warrant. Suspected criminals have the ability to mislabel or hide information and directories; encode communications to avoid using key words, attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require Agents to conduct more extensive searches, such as scanning areas of the device's memory not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

**WHEREFORE**, based upon the foregoing, your Affiant submits that there is probable cause to believe that the **Subject Telephones** are evidence of, and/or contain evidence of the Enumerated Offenses, and/or evidence of other co-conspirators involved in the Enumerated Offenses, which have been and continue to be committed.

_____
BRIAN RICHARDS
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me

this 29th day of January, 2018

_____
HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

13